AO 91 (Rev. 11/11) Criminal Complaint (modified by USAO for telephone or other reliable electronic means)

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT
9/14/23

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

United States of America
v.
Natalie Nicole Foley
*Defendant(s)*

Case No. 3:23-mj-376

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 9, 2023 in the county of Montgomery in the Southern District of Ohio, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 846 | Conspiracy to Possess with Intent to Distribute a Controlled Substance. |
| 18 U.S.C. §§ 922(g)(1) and 924(a)(8) | Felon in Possession of a Firearm and Ammunition. |
| 21 U.S.C. § 856(a)(1) | Maintaining a Drug-Involved Premises. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

[signature]
*Complainant's signature*

TFO Dustin Phillips, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone *(specify reliable electronic means).*

Date: September 14, 2023

[signature]

City and state: Dayton, Ohio

Caroline H. Gentry
United States Magistrate Judge

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO

# AFFIDAVIT

I, Dustin J. Phillips, am currently a Task Force Officer ("TFO") assigned to both the Federal Bureau of Investigation's ("FBI") Safe Streets Task Force ("SSTF") and the Dayton Police Department's ("DPD") Major Case/Drug Enforcement Unit. After being duly sworn, I depose as follows:

## INTRODUCTION

1. I have been employed as a law enforcement officer with the DPD for the past sixteen (16) years. Based upon my SSTF TFO status I have been sworn under Title 21, United Stated Code ("U.S.C."), Section 878 to serve as an officer of the United States duly empowered to conduct federal criminal investigations and execute arrests for criminal violations pursuant to Titles 18 and 21 of the U.S.C.

2. As a TFO with both the DPD's Major Case/Drug Enforcement Unit within the Narcotics Bureau and the FBI's SSTF, I have concentrated on the investigation of narcotics, firearms, and gang related criminal cases. During my law enforcement career, I have been involved in dozens of drug-related arrests, search warrants resulting in the seizure of large quantities of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of police informants who have provided law enforcement authorities valuable and accurate information and assistance that resulted in undercover narcotics purchases and apprehensions. During my law enforcement career, I have received an extensive amount of formal and informal training in the investigation of drug trafficking and narcotics related crimes. Based on my extensive experience, training, education and knowledge in the investigation of narcotics related cases, I have come to recognize the inextricable link between drug trafficking activities, firearms, and the potential for violence.

3. This affidavit is submitted in support of a criminal complaint which seeks the issuance of federal arrest warrants against **ANTHONY JACOB SMEDLEY SR.** (hereinafter referred to **"SMEDLEY"**) and **NATALIE NICOLE FOLEY** (hereinafter referred to **"FOLEY"**) for the following suspected offenses:

   a. Conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 846, and

   b. Being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

   c. Maintaining a Drug-Involved Premises, in violation of 21 U.S.C. § 856(a)(1).

The facts contained in this affidavit are submitted for the express purpose of establishing probable cause to obtain arrest warrants for both **SMEDLEY** and **FOLEY**. This affidavit does not include

every fact presently known to law enforcement authorities who participated in subject investigation.

**FACTS**

4. On February 8, 2023, Montgomery County Common Pleas Judge Mary Katherine Huffman issued a search warrant in Case No. 23CRJ274 for premises located at 3023 North Dixie Drive, Apartment 1 which was believed to then be occupied by both **SMEDLEY** and **FOLEY**. Said state search warrant was executed on February 9, 2023. Your Affiant personally participated in the execution of this warrant.

5. Both **SMEDLEY** and **FOLEY** were observed leaving the target residence immediately prior to the execution of said search warrant and were detained and removed from the house. When investigators first made contact with both individuals, they were found to be in possession of individual cellular phones and sets of keys. **SMEDLEY** was additionally found to have $3,585 in U.S. currency on his person. Upon entering the target premises, the search team determined there were no other individuals inside.

6. A search of the subject residence led to the discovery and seizure of several items of evidence including: several baggies of narcotics, a stolen AR-15 Ruger .223 rifle bearing serial number 85225741, a Smith and Wesson .380 pistol bearing serial number KFS0608, and a number of items of possessory interest linking both **SMEDLEY** and **FOLEY** to the target residence. During the execution of this search warrant, two locked boxes were located in the sole bedroom of the house. The first box was opened using a key that **SMEDLEY** had in his possession when he was taken into custody. Inside this box were found several baggies of suspected methamphetamine. The second locked box was unlocked using a key that **FOLEY** had in her possession when she was taken into custody. Inside this box was found a realistic looking BB gun and several live 9mm rounds inserted into a firearm magazine. All items were collected as evidence and tagged into the DPD Property Room.

7. Following discovery of said items, your Affiant independently spoke with both **FOLEY** and **SMEDLEY**. I first interviewed **FOLEY** following advisement of Miranda rights. She agreed to speak without the presence of a lawyer. During this interview, she admitted to using methamphetamine and heroin, however denied selling any drugs. She denied having any knowledge of the presence of firearms inside the house. She further explained that she regularly sleeps in the bedroom in which the majority of the incriminating evidence was recovered. Law enforcement officials located two small baggies of suspected fentanyl located on top of the bed in this room. One baggie was found laying out on the bed, while the second baggie was found inside a purse. Foley's driver's license was found inside said purse. She advised your Affiant that she did not think there was any drugs on the bed. I next discussed her criminal history. She advised she had been convicted of Vehicular Assault several years ago and was sentenced to probation. I asked her if she knew that she was no longer permitted to possess be around any firearms due to her conviction. She indicated she was in-fact aware of that, however thought this restriction ended upon completion of her probation. When further asked about **SMEDLEY**, she indicated he did use methamphetamine and heroin but indicated she was unaware as to whether he engaged in drug trafficking.

8. I next interviewed **SMEDLEY**. I advised him of his Miranda rights, and he agreed to speak to me. I asked him about the drugs and guns found inside the house. He eventually acknowledged knowing about the pistol which was found in the target house but claimed he didn't know anything about the rifle. He further acknowledged knowing about both the methamphetamine and fentanyl found in the house and estimated that there was approximately 4-5 ounces of methamphetamine and a very small amount of fentanyl inside. He further acknowledged selling drugs to make ends meet.

9. Both **SMEDLEY** and **FOLEY** were thereafter arrested on state charges following the execution of the state search warrant. Both individuals were subsequently released pending the results of the forensic drug analysis by the crime laboratory.

10. All of the previously described seized baggies which contained suspected narcotics were submitted to the Hamilton County Crime Laboratory (HCCL) for forensic testing. The HCCL confirmed that the contents of said baggies in-fact contained, to wit: five (5) baggies containing methamphetamine, a Schedule II controlled substance, weighing a total of 156.1 grams; one (1) baggie containing a mixture of Fentanyl, also known as N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, a Schedule II controlled substance, fluorofentanyl, an analog of Fentanyl, and medetomidine, weighing a total of 2.837 grams; and one (1) baggie containing a mixture of Fentanyl, also known as N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide, a Schedule II controlled substance, fluorofentanyl, an analog of Fentanyl, acetyl fentanyl, an analog of Fentanyl, methamphetamine, a Schedule II controlled substance, and medetomidine, weighing 1.046 grams.

11. Based upon my prior law enforcement training and experience as a narcotics detective, I know that methamphetamine is commonly sold in retail amounts of approximately one-gram increments. Approximately one-gram quantities are typically considered an "individual use" amount according to information I have personally gathered from previous interviews of known methamphetamine users and dealers. The presence of 156.1 grams, along with statements made by **SMEDLEY,** confirm that the drugs recovered on February 9, 2023, from the target residence clearly qualify as a "distribution quantity".

12. On February 14, 2023, Dayton Municipal Court Judge Christopher Roberts issued search warrants in Case Nos. 15252 and 15253 for the cellular phones recovered from **SMEDLEY** and **FOLEY** on February 9, 2023. Both cell phones were subsequently forensically examined, and a copy of all stored data found on said phones was provided to me. After examining the contents of said cell phones, I discovered evidence of several prior instances of drug related conversations involving both **SMEDLEY** and **FOLEY**. Many of these text messages used common drug trafficking code words or phrases such as "ice cream", "a ball of cream", "a gm of boy", "half gm of fet", "fetty", and more. Examples of such conversations were found stored on both **SMEDLEY** and **FOLEY's** cell phones. Additionally, **FOLEY's** phone contained at least one photograph of what appeared to depict illegal narcotics. **SMEDLEY's** phone contained several photographs of similar photos of suspected illegal narcotics. There were also several photographs found in **SMEDLEY's** cell phone depicting various firearms. One of the firearms photographed appeared to the same AR-15 firearm which was recovered from the

target residence on February 9, 2023. Based upon my prior experience and training, I know it is common for drug traffickers to photograph not only their drugs, but also their firearms.

13. On March 13, 2023, an anonymous tip was received by the Miami Valley Crime Stoppers Tip Telephone Line. This tip indicated that a "Tony Smedley" was still actively engaging in drug trafficking from his residence located on North Dixie Drive. This tipster also indicated that **SMEDLEY** was also known to in possession of a firearm.

14. On September 8, 2023, U.S. Magistrate Judge Caroline H. Gentry issued a search warrant in Case No. 3:23-mj-367 for premises located at 3023 North Dixie Drive, Apartment 1, which was then believed by law enforcement authorities to be occupied by both **SMEDLEY** and **FOLEY**. On September 13, 2023, members of the FBI Special Weapons and Tactics (SWAT) Team, appeared at said location to execute said warrant. Execution of this search warrant commenced at 0600 hours by SWAT Team members activating overhead emergency lights mounted on their vehicles, and providing loud, verbal commands over a public address system directing any and all occupants of 3023 North Dixie Drive, Apartment 1 to immediately exit the premises. After a short period of time, both **SMEDLEY** and **FOLEY** exited the front door of the residence and were immediately taken into custody. When **SMEDLEY** exited, he was found to be in possession of $4,209 in U.S. currency. SWAT Team members proceeded to enter the house to determine whether any other persons were inside. Once that task was accomplished, the target house was turned over to the SSTF members who completed the search of the residence.

15. This search resulted in the discovery of one loaded firearm, a Springfield XD 9mm bearing serial number AT147667; several baggies of suspected narcotics; multiple digital scales with what appeared to be drug residue; two cellular phones; and a digital video recorder (DVR) which was hooked up to a large monitor in the living room and several exterior surveillance cameras. Each of theses said items are consistent with drug trafficking activity.

16. The Springfield firearm was specifically located in the kitchen trash can. The gun was found lying on top of all the trash in the trashcan consistent with being recently dropped there. Additionally, several of the baggies of suspected narcotics were located in the basement on top of the house foundation, between two floor joists. Each of these baggies were observed to be free from any debris or dust despite the dirty basement conditions making it apparent that they were just recently placed there. The only other suspected drugs located in the house were recovered from the living room area. There was a small amount of what appeared to be methamphetamine residue located on top of one of the digital scales which was scraped into a baggie. There was also a small baggie of what appeared to be fentanyl located inside **FOLEY's** purse found in the living room. This baggie weighed approximately three (3) grams.

17. Your Affiant inspected each of the seized baggies of suspected narcotics. There was one large Ziploc bag found to contain several smaller baggies of what appeared to be methamphetamine. FBI Special Agent ("SA") Robert Buzzard was on scene and utilized a TruNarc Narcotics Analyzer on the contents of this large baggie. This test confirmed that this bag contained methamphetamine, a Schedule II controlled substance. This bag of methamphetamine weighed approximately 360 grams. SA Buzzard also attempted to perform another analysis on one of

the other recovered suspected controlled substances, however this test proved inconclusive. The remainder of the baggies of suspected narcotics had a similar appearance to drugs I have recovered in the past, which after having been analyzed by the crime laboratory, which were later confirmed to be fentanyl. These baggies of suspected fentanyl weighed approximately 75 grams. All of the said seized baggies containing suspected narcotics were submitted to the HCCL for forensic testing. Results remain pending.

18. After locating the various said items of evidence inside the target residence, I proceeded to a parked police cruiser to attempt to independently interview both **SMEDLEY** and **FOLEY.** I first approached **SMEDLEY** whereupon I advised him of his Miranda Warnings. **SMEDLEY** agreed to speak with me without the presence of a lawyer. I began by asking him about the items located inside the residence whereupon he denied having any knowledge of them. This concluded my interview. I next approached **FOLEY** whereupon I advised her of her Miranda warnings. She agreed to speak with me. During her interview, **FOLEY** admitted to engaging in drug trafficking prior to the February 9, 2023, search of the target residence. She professed that she had not engaged in any drug trafficking since that date. **FOLEY** indicated that neither she nor **SMEDLEY** have any legitimate jobs. She further stated that she knew **SMEDLEY** still was engaged in selling drugs, however denied she had any involvement with such illicit activity since the February 9, 2023, search warrant. Following the completion of both subject interviews, **SMEDLEY** and **FOLEY** were transported and booked into the Montgomery County Jail.

19. Based upon my prior law enforcement training and experience investigating in excess of a hundred narcotics cases, it is my firm opinion that both **SMEDLEY** and **FOLEY** were actively engaged in drug trafficking activities at the time of their original February 9, 2023, arrests on state charges, and continued with these illicit activities until the time of the most recent September 13, 2023, search of the target premises. This opinion is based upon the following factors: (a) **SMEDLEY's** statements admitting that he was trafficking drugs prior to and leading up to the February 9, 2023 search warrant; (b) the presence of $3,585 in U.S. currency found on **SMEDLEY's** person on February 9, 2023; (c) the presence of $4,209 in U.S. currency found on **SMEDLEY's** person on September 13, 2023; (d) the discovery of a total of approximately 516.1 grams of methamphetamine total (156.1 grams from February 9 and 360 grams from September 13) in the target premise; (e) the fact that such an amount of methamphetamine would clearly equate a "distribution amount" of drugs; (f) **SMEDLEY** and **FOLEY's** presence at 3023 North Dixie Drive, Apartment 1, which had previously been identified as a verified drug trafficking location by detectives; and (g) the March 13, 2023 information provided by a tipster on the Miami Valley Crime Stoppers Tip Telephone Line.

20. Special Agent Christopher Reed of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who specializes in identifying firearms and their origin/place of manufacture, has advised your Affiant that Ruger, Smith and Wesson, and Springfield firearms are all manufactured at locations outside the State of Ohio. As such, an interstate nexus exists for each of the various firearms seized during the two separate search warrants. Based upon your Affiant's prior law enforcement training and experience, I have become aware that a common nexus exists between drug trafficking activity and the use and possession of firearms.

21. Your Affiant has performed a criminal records review of **SMEDLEY's** criminal history. This search has confirmed that **SMEDLEY** has previously been convicted of the following felony crimes, each of which carry a maximum statutory penalty in excess of imprisonment one year, to wit:

    a. On or about April 11, 2000, in the Montgomery County Court of Common Pleas, in Case Number 99-CR-4142, for Trafficking in Marijuana (Vicinity of a School), in violation of the Ohio Revised Code; and

    b. On or about July 8, 2003, in the Montgomery County Court of Common Pleas, in Case Number 2002CR04573/3, for Complicity to Commit Burglary, in violation of the Ohio Revised Code; and

    c. On or about August 22, 2013, in the Montgomery County Court of Common Pleas, in Case number 2013CR01201/01, for Breaking and Entering (Unoccupied Structure) and Grand Theft (More than $7,500 but less than $150,000), in violation of the Ohio Revised Code; and

    d. On or about September 30, 2013, in the Miami County Court of Common Pleas, in Case Number 13CR287, for Burglary, in violation of the Ohio Revised Code.

22. Your Affiant has also performed a criminal records review of **FOLEY's** criminal history. This search has confirmed that **FOLEY** has previously been convicted of the following felony crime which carries a maximum statutory penalty in excess of imprisonment one year, to wit:

    a. On or about May 15, 2017, in the Montgomery County Court of Common Pleas, in Case number 2016CR01837, for Vehicular Assault, in violation of the Ohio Revised Code.

23. Based on the above information, I believe that probable cause exists to conclude that between on or about February 9, 2023 and continuing up to and including September 13, 2023, while in the Southern District of Ohio, both **SMEDLEY** and **FOLEY** knowingly and intentionally conspired to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) and 846; were in Possession of Firearms and Ammunition after having been convicted of felony crimes punishable by more than one year in prison, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8); and Maintained a Drug-Involved Premises, in violation of 21 U.S.C. § 856(a)(1).

24. As such, I respectfully request that individual arrest warrants be issued against both **SMEDLEY** and **FOLEY** for the aforesaid criminal violations.

Dustin J. Phillips, Task Force Officer
FBI-CID Task Force
DPD-Major Case/Drug Enforcement

Sworn and subscribed before me via telephone on this 14th day of September 2023.

Caroline H. Gentry
United States Magistrate Judge

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO